NELLIS, Respondent, vs. CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC RAILROAD COMPANY, Appellant.

*April 8—October 13, 1931.*

For the appellant there were briefs by *Bender, Trump, McIntyre & Freeman* of Milwaukee, and oral argument by *Rodger M. Trump.*

For the respondent there were briefs by *J. C. Morgan* of Wausaukee, attorney, and *L. M. Nelson* of Marinette of counsel, and oral argument by *Mr. Nelson.*

The following opinion was filed May 12, 1931:

NELSON, J. The defendant contends that the court erred in denying its motion for a directed verdict and for refusing to render judgment in its favor notwithstanding the verdict.

Both assignments of error involve the same contentions so that we may dispose of this case by discussing the question as to whether the court erred in refusing to direct a verdict. This claim of error is based upon the following contentions: (1) That the plaintiff assumed the risk of injury as a matter of law. (2) That the plaintiff was guilty of contributory negligence as a matter of law, because he failed to perform his duty under defendant's rules, of which he had knowledge, to discover the defect, and then either to repair it, if he was able to do so, or to notify the roadmaster so that the defect might be remedied, and because of his carelessness in pounding on the wooden rail while the car was standing thereon.

It is conceded that the plaintiff and defendant were engaged in interstate commerce at the time of the accident and that this action is governed by the provisions of the act of April 22, 1908, ch. 149, sec. 1, 35 U. S. Stats. at Large, 65 (45 U. S. C. A. § 51), generally known as the federal Employers' Liability Act. So much of said law as is necessary to recite is as follows:

"Every common carrier by railroad while engaging in commerce between any of the several states . . . shall be. liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury . . . resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, . . . or other equipment."

It clearly appears that, under that act, a liability is imposed for injury to an employee resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier or by reason of any defect or insufficiency due to its negligence in its cars, engines, appliances, or other equipment. *Seaboard Air Line Railway v. Horton,* 233 U. S. 492, 34 Sup. Ct. 635; *Spokane & Inland*

*E. R. Co. v. Campbell,* 241 U. S. 497, 36 Sup. Ct. 683. It appears from the evidence that the car in question had been in charge of the plaintiff for about two years; that when it was delivered to him it was an overhauled car (the extent of which overhauling, or whether the clutch was overhauled, does not appear) ; that at the time of the accident the clutch was defective and insufficient, at least for the purpose of braking the car while it was standing still; that the car was equipped with no other device for braking the car while it was standing still; that the defective part of the clutch was so concealed and hidden as not to be obvious or patent to the plaintiff, and its defective condition in the respect claimed was in fact unknown to him prior to the accident; that it was not his duty to inspect the car for defects which were hidden or concealed and of which he had no actual knowledge; that the defendant had a regular employee who was a skilled motor-car inspector; that no inspection of this particular car had been made by any one competent to discover concealed or latent defects for at least two years prior to the accident; that the plaintiff knew that at two different times during a period of about a month before the accident the driving chain had come off while the car was in motion and that at such times, pursuant to instructions given him at the time the car was delivered to him, he tightened a nut on the clutch, which had the effect of tightening the chain and preventing its coming off when such readjustment was made; that the plaintiff always used the clutch as a brake when the car was standing still and had never had any trouble with it due to the failure of the clutch to function as a brake while the car was standing still.

In this situation, may it be held as a matter of law that the plaintiff assumed the risk of injury? We think not. In *Seaboard Air Line Railway v. Horton, supra,* which seems to be the leading case dealing with the assumption of risk

in an action brought under the Safety Appliance Act, it was said (p. 504) :

"Some employments are necessarily fraught with danger to the workman—danger that must be and is confronted in the line of his duty. Such dangers as are normally and necessarily incident to the occupation are presumably taken into the account in fixing the rate of wages. And a workman of mature years is taken to assume risks of this sort, whether he is actually aware of them or not. But risks of another sort, not naturally incident to the occupation, may arise out of the failure of the employer to exercise due care with respect to providing a safe place of work and suitable and safe appliances for the work. These the employee is not treated as assuming until he becomes aware of the defect or disrepair and of the risk arising from it, unless defect and risk alike are so obvious that an ordinarily prudent person under the circumstances would have observed and appreciated them. These distinctions have been recognized and applied in numerous decisions of this court,"—citing the following decisions: *Choctaw, O. & G. R. Co. v. McDade,* 191 U. S. 64, 68, 24 Sup. Ct. 24; *Schlemmer v. Buffalo, R. & P. R. Co.* 220 U. S. 590, 596, 31 Sup. Ct. 561; *Texas & Pac. R. Co. v. Harvey,* 228 U. S. 319, 321, 33 Sup. Ct. 518; *Gila Valley, G. & N. R. Co. v. Hall,* 232 U. S. 94, 102, 34 Sup. Ct. 229, in support thereof.

In *Gila Valley, G. & N. R. Co. v. Hall, supra,* it was said (p. 101) :

"An employee assumes the risk of dangers normally incident to the occupation in which he voluntarily engages, so far as these are not attributable to the employer's negligence. But the employee has a right to assume that his employer has exercised proper care with respect to providing a safe place of work and suitable and safe appliances for the work, and is not to be treated as assuming the risk arising from a defect that is attributable to the employer's negligence until the employee becomes aware of such defect, or unless it is so plainly observable that he may be presumed to have known of it. Moreover, in order to charge an employee with the assumption of a risk attributable to a defect due to the em-

ployer's negligence, it must appear not only that he knew (or is presumed to have known) of the defect, but that he knew it endangered his safety; or else such danger must have been so obvious that an ordinarily prudent person under the circumstances would have appreciated it," citing a number of cases in support thereof.

In *Chicago, M., St. P. & P. R. Co. v. Busby,* 41 Fed. (2d) 617, it was held that the general rule is that the servant assumes the ordinary risk of employment and the extraordinary risk arising from the negligence of the master or fellow servants, if the danger is known and appreciated, and that the failure to keep a motor car in proper repair, including the question of assumption of risk, were questions for the jury.

Applying the well established law to the facts and circumstances of this case, we cannot say as a matter of law that the plaintiff assumed the risk of an injury which the jury found was caused by the defective clutch.

Had the plaintiff's injury occurred while the car was being operated and in motion and had it been caused by the chain slipping off from the sprocket, a different situation might exist because the plaintiff knew that the car was in such a condition as to have permitted the chain to come off several times during the month preceding the accident. In *Seaboard Air Line Railway v. Horton, supra,* it was said (p. 504) :

"When the employee does know of the defect, and appreciates the risk that is attributable to it, then if he continues in the employment without objection, or without obtaining from the employer or his representative an assurance that the defect will be remedied, the employee assumes the risk, even though it arise out of the master's breach of duty," citing several cases.

But it does not appear that the chain had slipped off at the time plaintiff was injured. On the contrary, the chain was in proper position. When the plaintiff pushed the car

out onto the wooden track and engaged the clutch he had no reason to believe or anticipate that the engaged clutch would not operate as a proper and suitable brake and effectively hold the car where it was left. It quite clearly appears that, had the clutch not been in a worn and defective condition, it would have been impossible for the car to move down the slight incline and bump into the plaintiff while he was engaged in cutting off the piece of wood. We conclude that the question of assumption of risk, under all the facts and circumstances of this case, presented a jury issue and its finding cannot be disturbed.

Nor can we say that the plaintiff was guilty of contributory negligence as a matter of law because he failed to discover, before his injury, that the clutch was defective and therefore ineffective as a brake, or because he used one of the wooden rails of the runway as a work-bench and pounded thereon with his hatchet.

While it was plaintiff's duty, under the rules promulgated by the defendant, with which he was familiar, to inspect the car each day for the purpose of insuring that all bolts, nuts, and cotters were in place and tight, that the gasoline tank feed pipes and connections did not leak, that there were no bent or badly worn axles, wheels, or bearings, that the brakes were in proper adjustment and in good condition and that the wheel gauge was correct, it is quite clear that the inspection required by such rules related to the rather obvious, patent, and easily discoverable defects. Such rules obviously did not require the plaintiff to make a daily inspection of the car for the purpose of discovering latent or concealed defects in it, of which he had no notice or knowledge. The mere fact that the chain had, on several occasions, come off does not conclusively show that the plaintiff knew, or ought to have known, that the clutch was defective when used as a brake. When the car was delivered to him it was reasonably expected by the defendant that the chain might occasionally

come off, for the defendant's instructions accompanying the car gave directions as to the manner of tightening up the chain and remedying such condition when the chain came off. Neither the published rules offered in evidence nor any of the testimony supports the claim that it was the duty of the plaintiff to discover by inspection the defective condition of the clutch. It is doubtful if such a burden, requiring rather technical and exceptional knowledge, not generally possessed by section-men, could be placed upon them even by the promulgation of printed rules. Had the plaintiff known that the clutch was defective and that it was in fact ineffective as a brake while the car was standing still, there would be considerable merit to defendant's contention that the plaintiff was guilty of contributory negligence as a matter of law. However, the jury had a right to find that the plaintiff did not know that the clutch was defective and ineffective as a brake. It further quite conclusively appears that if the clutch had not been defective it would have held the car in place and prevented its rolling down the incline and hitting the plaintiff, even though he jarred the car by pounding on the wooden rail. We think that the question of plaintiff's contributory negligence, under all of the circumstances, was for the jury.

We conclude, under all the circumstances, that the issues were properly submitted and the judgment entered upon the verdict as rendered cannot be disturbed.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on October 13, 1931.